# Hurd *v.* Lacy.

*Action for Damages, on account of Injuries to Mule.*

1. *Injuries to stock running at large, by barbed wire around uninclosed lot.*—In this State, the owner of stock is not required to keep them within an inclosure, but may lawfully suffer them to run at large; and he may maintain an action for damages on account of injuries to one of them by a barbed wire stretched around the uninclosed sides of a corner lot so negligently as not to constitute a lawful fence, in the absence of a local statute or municipal regulation changing the general law.

APPEAL from the City Court of Decatur.

Tried before the Hon. WM. H. SIMPSON.

Action for damages by Ellsworth Lacy against E. O. Hurd, on account of injuries to plaintiff's mule caused by a barbed wire, which the defendant had stretched around the uninclosed sides of a corner lot in Decatur. The defendant pleaded not guilty and contributory negligence, and issue was joined on these pleas. The cause was submitted to the decision of the court without a jury. The court made a special finding of the facts, and rendered judgment for the plaintiff; and this judgment is here assigned as error.

BRICKELL, HARRIS & EYSTER, for appellant.

WERT & SPEAKE, *contra*, cited *Sisk v. Crump*, 112 Ind. 504; s. c., 2 Amer. St. 213.

WALKER, J.—Appellant had a vacant lot on the corner of Church and Sycamore streets in the town of Decatur. There were no fences on the side of the lot next to the two streets. To keep persons from passing across the lot, the appellant had a barbed wire stretched along its side next to one of the streets, a distance of one hundred and thirty-two feet. The wire was supported by five posts thirty or forty feet apart, and was about four feet from the ground at the posts. It was stretched by hand only, and sagged between the posts from eight to twelve inches. There was nothing but the posts and

[Hurd v. Lacy.]

the single wire to warn stock, or to prevent them from running against the wire. There was some growth on the lot, upon which stock would browse. The appellee's mule, while running at large, came in contact with said barbed wire, and thereby received injuries which totally disabled it. The case was tried without a jury, and the City Court found as a fact, that said wire fence was not constructed as ordinarily prudent husbandmen usually construct such fences, but was erected negligently, carelessly and dangerously, and without proper regard for the rights of the plaintiff or of the public.

In considering the question of the appellant's liability on the facts of this case, regard is to be had to the state of our law as to the right of owners of domestic animals to suffer them to run at large. In view of the statutes and of the former decisions of this court, no discussion of this subject is called for in the present case. It is well settled that, when such animals go upon lands not inclosed by a lawful fence as defined by the statute, the owner thereof can not be regarded as a trespasser; that the owner of cattle and stock has the right to permit them to run at large; and that, in exercising this right, he can not be treated as guilty of contributory negligence in reference to any injury they may suffer in consequence of the fault of the proprietor of the uninclosed premises upon which they may stray or intrude.—Code of 1886, §§ 1364, 1365; *Ala. Gt. Southern R. R. Co. v. Jones*, 71 Ala. 487; *Pruitt v. Ellington*, 59 Ala. 454; *Lee County v. Yarbrough*, 85 Ala. 590; *Rowe v. Baber*, decided during the present term. The common-law rule, that the owner of domestic animals must keep them in his own inclosure, and can not, without becoming a trespasser, suffer them to run at large on the uninclosed lands of others, is completely reversed in this State; so that the general rule here is to fence stock out, not in, the law specially protecting the right of the owner thereof to suffer them to run at large.

Where no right to suffer domestic animals to run at large is recognized, it legitimately follows that the owner thereof, being chargeable with knowledge of the natural propensity of such animals to stray upon any lands to which access is not cut off, in failing to keep them confined, should be treated as assuming the risks to which they may be exposed in their wanderings, and should be answerable for such damages as may naturally be expected to result from the intrusion of such animals upon the premises of others. Where, on the other hand, the right to suffer such animals to run at large is recognized, it would seem as legitimately to follow that the owner of land, not properly inclosed, is without remedy for injury

[Hurd v. Lacy.]

caused to his premises by stock running at large, and is also to be held to expose himself to liability for damages to such stock occasioned by erections or excavations so made on the land as to be obviously dangerous to animals straying thereon. Good reason for distinguishing the respective duties and liabilities of the land-owner, according as he is subject to the one or the other of the above mentioned rules of law as to confining or not confining domestic animals, is to be found in the consideration that the results of applying the maxim, that you must so use your property as not to injure the property of another, necessarily depend upon the state of the law as to the correlative rights of the land-owner and of those who may be affected by his use of his property. There is a striking contrast between the positions of two proprietors, one of whom has the right to leave his land uninclosed, and yet to treat the invasion of his premises by domestic animals as trespasses, and the other of whom must securely inclose his premises in order to acquire any right to complain of domestic animals straying thereon. Such differences as to what is required to confer upon the land-owner the right to an exclusive enjoyment of his property, free from annoyance by straying stock, must, of necessity, lead to corresponding differences in the rules to be applied in determining the liability of the land-owner for injuries to stock straying upon his premises. The liability must, to some extent, depend upon the question as to whether the law regards such intrusion as rightful or wrongful. Upon this subject the rule prevailing here is very different from the old common-law rule. The result is to work a corresponding change in the liability of the land-owner. It follows, therefore, that where the general law of this State prevails, a person's right to the use of his land is, in a measure, affected by the recognized right of others to allow their stock to run at large. This latter right would be practically destroyed if upon the lands not inclosed by a lawful fence erections or excavations could, with impunity, be so made that animals straying thereon would be exposed to injury or destruction. It seems plain, under our law, that the land-owner has no right to expose straying stock to such perils. He may be under no duty to guard them from the dangers to which they may be exposed in consequence of the natural features of the land, such as ditches, holes, decayed trees liable to fall, &c. Nor would he be liable for an injury to an animal caused by a fence built in the usual way. If, however, a fence or other erection is so negligently maintained on the land as to be in effect a trap to passing animals; if the injury to animals is the natural or probable consequence of the act, and such as

[Craft & Co. v. Summersell.]

any prudent man must have foreseen, then, in the event of such injury, the land-owner is liable in damages therefor. *Sisk v. Crump*, 112 Ind. 504; 2 Am. St. Rep. 213, and authorities there cited.

The evidence in this case fully sustained the finding of the City Court as to the defendant's negligence. A single barbed wire, four feet from the ground, and loosely hung from posts thirty or forty feet apart, was certainly not calculated to attract the notice of animals so as to prevent them from trying to pass to or from the lot, which was otherwise uninclosed. It could not be pretended that such an erection was a barbed wire fence, constructed and maintained as ordinarily prudent husbandmen usually construct fences. There was no proof of any local law, or municipal regulation, abridging the right of the owner of domestic animals to suffer them to run at large. The defendant being chargeable with knowledge of this right in others, and also with knowledge of the habits of such animals to stray and browse upon uninclosed land, is to be regarded as guilty of negligence in permitting the wire to remain in such a condition as to be an obvious peril to animals straying upon the lot. And the injury complained of having resulted from such negligence, the defendant was liable therefor.

The conclusion of fact stated in defendant's second plea, to the effect that contributory negligence on the part of the plaintiff was deducible from his acts in allowing his mule to run at large and to trespass upon defendant's property, was not supported by the evidence; because, in the circumstances developed by the proof, those acts did not constitute negligence, as they might have done under the influence of a local law, or municipal regulation, rendering inapplicable the general law of the State on the subject. No error is discovered in the rulings of the City Court.

Affirmed.