274 So.2d 46

**Bruce Kenton CHANDLER**

v.

**Henry WAUGH et al.**

**SC 40.**

Supreme Court of Alabama.

Feb. 22, 1973.

---

George W. Nichols, Jr., Tuscaloosa, for appellant.

Huie, Fernambucq & Stewart and E. D. Martenson, Birmingham, for appellees.

MADDOX, Justice.

The major question presented by this appeal is whether the owner of an animal which is running at large on a city street can be held liable in damages for his negligence if the animal causes an automobile accident which produces injury. Appellant contends that state law which requires proof that the owner *knowingly* or *intentionally* placed the animal in the street before recovery can be had is applicable only to areas outside cities which have adopted ordinances to prevent animals from running at large. Appellee says that in all cases of automobile accidents involving animals running at large, before liability attaches, it must be shown that the owner knowingly or intentionally put the animal in the highway or street.

This case arose out of an accident that occurred in the early morning of June 1, 1969, within the city limits of the city of Tuscaloosa. Plaintiff, Bruce Kenton Chandler, was a passenger in an automobile driven by David Shirley when the automobile was wrecked in an attempt to avoid hitting a horse which was standing on the road in the path of the Shirley automobile. The horse belonged to the defendant, Henry Waugh.

The driver, Shirley, attempted to avoid hitting the horse and in the process, the automobile overturned. Plaintiff was thrown from the car and seriously injured, and sought to prove loss of wages and medical expenses as a result of the accident.

Plaintiff charged in his complaint that the defendant negligently allowed his horse to run at large in the city limits. He also claimed that the defendant intentionally and wilfully allowed his horse to run at large but candidly admits that he failed to prove the allegations of this count, and he does not take issue with the trial court's action, directing a verdict on this count. Plaintiff does take issue with the trial court's order sustaining defendant's demur-

rer to each of his counts charging simple negligence.

Plaintiff contends that the city of Tuscaloosa had adopted a stock ordinance under the authority granted to it by Title 3, Section 101, Code of Alabama, 1940, which made it a nuisance to allow a horse to run at large within the city.

Defendant argued before the trial court, and also argued here, that because of the provisions of Title 3, Section 79, Code of Alabama, 1940, he is not liable for any damages to the plaintiff unless it is alleged and proved that he knowingly or wilfully put or placed the horse on the road where the damages were occasioned. Title 3, Section 79, provides:

"The owner of such livestock or animal being or running at large upon the premises of another or upon the public lands, roads, highways or streets in the state of Alabama shall be liable for all damages done to crops, shade or fruit trees or ornamental shrubs and flowers of any person, to be recovered before any court of competent jurisdiction; and the judgment of the court against the owner of such livestock or animal so depredating shall be a lien superior to all other liens on the livestock or animal causing the injury, except as to taxes. *Provided, however, that the owner of any stock or animal shall not be liable for any damages to any motor vehicle, or any occupant thereof, suffered, caused by, or resulting from a collision with such stock or [other] animal, unless it be proven that such owner knowingly or wilfully put or placed such stock upon such public highway, road or street, where such damages were occasioned."* [Emphasis supplied.]

We are here concerned with the proviso in Section 79 which we have emphasized. If the defendant is correct, the trial court should have sustained defendant's demurrer. At first blush, it would appear that the proviso would be applicable here, but a study of the history of state stock laws indicates otherwise.

A review of laws regulating the keeping of animals indicates that areas within municipal limits have consistently been treated as separate stock law districts. At one time, municipalities were compelled by statute to adopt ordinances to prevent horses and other domestic animals from running at large. Act 419, Acts of Alabama, 1903, p. 365. In fact, a city could be compelled by mandamus to adopt an ordinance to prohibit animals from running at large. Huey v. Waldrop, 141 Ala. 318, 37 So. 380 (1904). The 1923 Code contained a similar provision which required municipalities to adopt ordinances to prevent stock running at large in the city. Code, 1923, Section 10224. The 1907 Code contained a similar provision. Code, 1907, Section 5898. In the 1940 Code, the adoption of ordinances was made discretionary, the Legislature substituting the word "may" for "shall" which was in prior codes. Title 3, Section 101, Code, 1940, now reads:

"The governing bodies of all cities or towns *may* adopt all such ordinances and laws as shall be necessary to prevent the running at large within these limits of all livestock or animals, and to take up and impound all such livestock or animals found so running at large, and to fix, prescribe and provide for the collection of penalties and impounding fees for all such livestock or animals so taken up and impounded." [Emphasis supplied.]

Since the passage of Act 419, Acts, 1903, it has been unlawful to allow livestock to run at large in the corporate limits of all towns and cities five thousand inhabitants or more. Code, 1907, Section 5897; Code, 1923, Section 10223; Title 3, Section 100, Code, 1940.

The proviso in Section 79, Title 3, Code, 1940, was first approved on September 13, 1939. Act 368, Acts, 1939, p. 487. Act 368 was known as the Local Option Stock Law

for the state of Alabama. It was codified as Title 3, Sections 77–94, Code, 1940.

At the time the Local Option Stock Law was adopted, the Legislature made important exceptions. Section 17 of the 1939 Act and Section 94 of Title 3 provide that the provisions of the Local Option Stock Law cannot be construed to repeal any *municipal stock law,* nor can the law be construed to prevent any municipality from enacting a stock law ordinance.

■ In view of the history of the various legislative grants and enactments, it seems reasonable to say that the intent of the Legislature was to make it unlawful for livestock to run at large in the corporate limits of cities and towns of five thousand inhabitants or more and to allow municipalities authority to adopt ordinances to prevent stock from running at large in the city or town.

■ Since we are construing various provisions of the 1940 Code as they relate to stock laws, we believe we should construe them together so as to produce a harmonious system, if possible. Donoghue v. Bunkley, 247 Ala. 423, 25 So.2d 61 (1946). The proviso in Section 79 was adopted at the same time Sections 94, 100 and 101 were adopted.

■ To construe the proviso in Section 79 to be inapplicable to municipalities which have adopted ordinances to prevent stock from running at large in the city limits is not inharmonious. Cities were the first stock law districts by virtue of state law. When the proviso in Section 79, Title 3, was adopted, municipalities were exempted from the provisions of the Local Option Stock Law specifically. Title 3, Section 94, Code. Furthermore, we believe that the proviso in Section 79 was adopted primarily to protect the owners of livestock

from liability for simple negligence in rural areas where the stock is concentrated and the probability that stock could get out and onto highways would be more prevalent.

We think the Legislature, in adopting the proviso in Section 79,[1] intended to make the owner or keeper of stock in areas outside municipalities (which had adopted stock laws or which enacted stock laws afterward) liable for damages in motor vehicle accidents caused by livestock only where the owner or keeper knowingly or wilfully placed or put the livestock on the highway, road or street. A reading of the various provisions of law relative to stock laws seems to show a legislative intention to separate the problem in the city from that of the county. Such distinctions are reasonable because of the problems—the automobile is more prevalent in cities and towns—livestock is more prevalent in areas outside cities and towns.

■ In construing the proviso in Section 79, we must apply a well-established rule of construction that provisos following an enacting clause are to be given a rational construction in harmony with the general purpose and intent of the enactment with a view to carrying into effect the whole purpose of the law. State v. Dixie Dairies Corp., 268 Ala. 480, 107 So.2d 896 (1959).

We do not think that the enacting clause of Section 79 contains a full enumeration of the items for which damages can be recovered. The enacting clause mentions *crops, shade* or *fruit trees,* and *ornamental shrubs* and *flowers.* Motor vehicles and occupants, the subject matter of the proviso, are not mentioned in the enacting clause. Consequently, giving a rational construction to the proviso and attempting to harmonize the various provisions of law,

1. The proviso in Section 79 was not in the original bill or in the substitute. The proviso was offered as an amendment by Representative Walter P. Gewin of Hale County and was adopted. Journal of the House, 1939, p. 1939.

we come to the conclusion that the proviso which limits the liability of an owner of an animal when a motor vehicle is involved, was not intended to apply in municipalities which had adopted stock law ordinances.

In order to assist the trial court in the event the case is tried again, we now discuss the question raised by the appellant relative to the plaintiff's claim for medical expenses and loss of earnings. The court refused to allow evidence of sums spent for medical care prior to the time the plaintiff's disability of non-age was removed. At the time of the accident, the plaintiff was a minor. It appears from the record that his parents were divorced and that he was living with his mother. Prior to the time suit was filed, plaintiff, upon petition filed by his mother, had his disabilities of non-age removed. He filed suit in his own name and claimed damages for loss of wages, personal injuries, permanent injuries, and medical expenses. The trial court refused to permit proof of medical expenses incurred prior to the date plaintiff's disability of non-age was removed.

To aid the lower court in the event this matter is raised during another trial, we think this Court's case of Central of Georgia R. Co. v. McNab, 150 Ala. 332, 43 So. 222 (1907), is dispositive of the question raised as to plaintiff's right to recover medical expenses and loss of wages. There, McNab, a minor, sued by his father and next friend to recover for medical expenses and loss of earnings. This Court discussed the general rules, as follows:

"In the complaint special damages are claimed for loss of time and for money expended for medicines and physicians' services. If it should be conceded that such damages are not recoverable by a minor, yet there is no reversible error in the ruling of the court overruling defendant's motion to strike such claim from the complaint, as the defendant had the right to protect itself against the recovery of such damages by objections to evidence and by special charges—Vandiver & Co. v. Waller, 143 Ala. 411, 39 South. 136. The defendant did object to the evidence tending to show such damages, and also requested the court to charge the jury in writing that such damages were not recoverable by the plaintiff. Therefore we must determine the contention of the defendant on its merits.

"It was admitted on the trial that Alf McNab was the father of the plaintiff. That the father is entitled to the services of an infant son, and may recover for the loss of them occasioned by the wrongful or negligent act of another, as a general proposition, may be conceded. The right of recovery for such loss is founded, not on the parental relation, but on the technical relation of master and servant.—Durden v. Barnett & Harris, 7 Ala. 169; Lyon v. Bolling, 14 Ala. 753, 48 Am.Dec. 122. *But the father may emancipate the minor son, and thus relinquish all claim to his services or the earnings of his industry; and emancipation may be shown, as may any other fact, either directly or by circumstances from which the jury would be authorized to infer the fact of emancipation. And the law will permit an emancipated minor to recover for loss of time occasioned by a personal injury caused by the negligence of a defendant.*—Lyon v. Bolling, supra; Forbes v. Loftin, 50 Ala. 396; Benziger v. Miller, 50 Ala. 206. It cannot be said that the record affords no evidence from which the jury was authorized to infer the fact of emancipation. Therefore evidence of time lost by the plaintiff and the value thereof was properly admitted.

"In respect to the claim for money expended in employing a physician and for medicine, the complaint alleges that the plaintiff had to expend large sums of money for physicians and medicine. Un-

**76**

der these averments it was competent to show that a physician did attend upon the plaintiff during his illness, that medicine was furnished by the physician in his ministrations upon the plaintiff, and the reasonable value of the services and medicine. But to authorize recovery under the averments of the complaint it would be necessary that such reasonable sums were expended. In the case of Forbes v. Loftin, supra, which was a suit by a minor, suing by next friend, to recover damages arising from a personal injury caused by the defendant, the plaintiff claimed as a part of the damages a physician's bill. The court said, with respect to the right of the plaintiff to recover: 'The medical attention rendered to the plaintiff during her illness was a proper charge against somebody, whether performed at her request or not. She, though a minor, has no father or guardian. In a suit against her by the physician, her minority, if a defense at all, would be a personal one, of which she might avail or not, as she chose. *The defendant can derive no benefit from it. A judgment against him in this suit for such damage would protect him against any other possible suit for the same damage.*' The fact that, in the suit in hand, the next friend in whose name the suit was brought and prosecuted to judgment was the plaintiff's father would seem to bring the case within the ruling made in the case quoted from.— Abeles v. Bransfield, 19 Kan. 16; Baker v. Flint & Pere Marquette R. Co., 51 N. W. 897, 91 Mich. 298, 16 L.R.A. 154, 30 Am.St.Rep. 471." [Emphasis supplied.]

The judgment of the trial court is due to be reversed and the cause remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.

HEFLIN, C. J., and MERRILL, HARWOOD and FAULKNER, JJ., concur.