419 So.2d 1340 (1982)
John C. SCOTT and Thelma K. Scott
v.
E. J. DUNN, et al.
80-829.
Supreme Court of Alabama.
July 23, 1982.
Rehearing Denied September 17, 1982.
*1341 G. Houston Howard, II, Wetumpka, for appellants.
Ted Taylor and Roger Morrow, Prattville, and Tom Wright, Montgomery, for appellees.
TORBERT, Chief Justice.
On January 16, 1980, John Scott, accompanied by his wife, Thelma Scott, was driving his automobile on Highway 14 in Autauga County, Alabama, when he struck a cow owned and/or cared for by Ben, E. J., and Glenn Dunn, and Dry Creek Farms. The Scotts brought suit in Circuit Court to recover damages for injuries they suffered as a result of the collision with the cow. The complaint alleged that the defendants were negligent, that they were reckless or wanton in their conduct, and that they failed to secure an animal of known mischievous propensities.
The defendants moved to dismiss the complaint for failure to state a claim upon which relief could be granted, based upon Code 1975, § 3-5-3(a). The Scotts moved for summary judgment, arguing that § 3-5-3(a) is unconstitutional. The trial court granted the defendants' motion to dismiss and denied the Scotts' motion for summary judgment.
The Scotts challenged the constitutionality of the statute on the grounds that it violated Ala.Const., art. I, § 13. Section 3-5-3(a) provides:
"The owner of such livestock or animal being or running at large upon the premises of another or upon the public lands, roads, highways or streets in the state of Alabama shall be liable for all damages done to crops, shade or fruit trees or ornamental shrubs and flowers of any person, to be recovered before any court of competent jurisdiction; provided, that the owner of any stock or animal shall not be liable for any damages to any motor vehicle or any occupant thereof suffered, caused by or resulting from a collision with such stock or other animal, unless it be proven that such owner knowingly or wilfully put or placed such stock upon such public highway, road or street where such damages were occasioned."
Code 1975, § 3-5-3(a). Section 13 of the Alabama Constitution provides:
"That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."
Ala.Const., art. I, § 13. For the following reasons we hold that § 3-5-3(a) does not violate § 13 and we thereby affirm the decision of the trial court.
The thrust of the appellants' contentions for reversal of the trial court is that the Alabama Legislature, by enacting Code 1975, § 3-5-3(a), has denied a common law remedy to persons traveling upon the highways of this state in contradiction to Ala. Const., art. I, § 13. This is simply not the case. The Alabama Legislature has, in fact, given persons who suffer damages on the public roads and highways as a result of livestock thereon a new cause of action that did not exist at common law.
When the Mississippi Territory was settled, the law adopted was that the land would be open territory; that is, a landowner *1342 was required to fence livestock out to protect his private land. Livestock were permitted to run at large on open land and on the public roads and highways. When Alabama became a state in 1819, it retained, as part of its common law, this same rule adopted in the Mississippi Territory. Nashville & Chattanooga Railroad Co. v. Peacock, 25 Ala. 229 (1854).
In the case of Smith v. Causey, 22 Ala. 568 (1853), this Court stated the law as it stood in Alabama:
"At [Alabama] common law, where an injury to another arises from carelessness in keeping domestic animals, which are not necessarily inclined to do mischief, such as dogs, horses, &c., no recovery can be had against the owner, for an injury done by them, unless it is averred and proved that he knew their vicious propensities, and so carelessly kept them, that injury resulted to the plaintiff therefrom. Burk v. Dyson, 4 Camp. 198; Smith v. Pelah, 2 Strange 1293; Durden v. Barnett & Harris, 7 Ala. 169."
22 Ala. at 571. Several years later, Chief Justice Brickell, writing for this Court, said in Mobile & Ohio Railroad Co. v. Williams, 53 Ala. 595 (1875):
"The doctrine of the [English] common law in relation to trespasses by and upon cattle running at large has never been of force in this State. It was never applicable to our situation, and is inconsistent with our estray laws and statutes in reference to trespasses by cattle. These laws treat unenclosed lands as common of pasture, and permit an owner to suffer his cattle to run at large. N. & C. R.R. v. Peacock, 25 Ala. 229. The character of inclosures & fences is carefully defined. R. C. § 1282. If an animal suffered to go at large trespasses or should do damage on lands not inclosed as required, the owner is exempt from liability therefor; and if the animal is injured, the person inflicting the injury is liable for five fold damages. R. C. § 1283.... This legislation is all founded on the theory of the right of an owner to permit his stock to run at large. In the exercise of this right he cannot be molested, and if injury is wantonly or negligently inflicted on his stock, the law entitles him to redress. He has a perfect right to suffer his animals to run at large, and those who would guard themselves from damages in consequence of it must inclose against them...."
53 Ala. at 596-97. This law was reiterated by the Court of Appeals in Means v. Morgan, 2 Ala.App. 547, 56 So. 759 (1911):
"The [English] common-law rule that animals must be kept on one's premises does not obtain in this state. The rule is, rather, reversed, and animals are permitted to run at large unless prohibited by statute. M. & O. R. R. Co. v. Williams, 53 Ala. 595; Hurd v. Lacy, 93 Ala. 427, 9 South. 378, 30 Am.St.Rep. 61.
"The maxim that one who suffers his animals to run at large takes upon himself the risk incidental thereto applies only where the animals are trespassing on the lands of another, and not to animals running at large in the highway. Colvin v. Sutherland, 32 Mo.App. 77."
2 Ala.App. at 550, 56 So. at 759-60. See also, Rowe v. Baber, 93 Ala. 422, 8 So. 865 (1890); Wilhite v. Speakman, 79 Ala. 400 (1885); Alabama Great Southern Railroad Co. v. Jones, 71 Ala. 487 (1882). These cases make it clear that the common law of Alabama, as adopted from the Mississippi Territory, did not allow an action for damages on public roads and highways caused by an animal of normal propensities.
When the Legislature adopted the present "closed state" stock law in 1939 (now found at § 3-5-3(a)), it also altered the liability of a livestock owner with respect to the public roads and highways. While under Alabama common law a livestock owner had the right to turn livestock out onto the public way, upon passage of Title 3, § 79 (now § 3-5-3(a)) in 1939, a livestock owner could be liable when he knowingly or willfully put or placed such stock upon the public roads or highways. Therefore, for the first time in Alabama, a person who sustained damages on a public highway could recover against a livestock owner under certain limited conditions. This act created a new right of action, limited though it may be, and did not abolish *1343 any common law rights, for before the 1939 enactment, persons suffering injury or property damage because of an animal on a public road or highways had no remedy unless the animal was known to have dangerous propensities.
The appellants, however, allege that § 3-5-3(a) abolishes all common law causes of action against the owners of livestock by the owners or occupants of motor vehicles, except actions based upon proof that the owner knowingly or willfully put or placed such stock upon the public highway. As stated, the 1939 act did not abolish a remedy for a protected right, but, instead, created a right where none had previously existed.
While it has been correctly stated that the common law is constantly changing and that this common law cannot be restricted to its meaning as of the date of statehood, it would be incorrect to hold that the right of action urged by the appellants had somehow become the law at some time in the past, thereby gaining the protection of § 13, when no case law, common law, or legislation has heretofore allowed such a recovery in this state.
To attack § 3-5-3(a) as unconstitutional under § 13, as do the appellants, one must begin with this Court's decision in Grantham v. Denke, 359 So.2d 785 (Ala.1978). The cornerstone of Grantham was that § 13 prohibits the Legislature from abolishing a cause of action recognized at common law.
Yet the present case involved a right totally unknown to the common law of Alabama. As stated by Slagle v. Parker, 370 So.2d 947 (Ala.1979), the Legislature may bar or limit actions that were not a part of the common law. That is exactly what the Legislature did when it passed the forerunner of § 3-5-3(a) in 1939. Since the only prohibition on the legislative power arises when an act abolishes all remedies for a common law or fundamental right, and since it is clear that this action was not recognized at common law in Alabama, then the Legislature was within its power when it enacted § 3-5-3(a).
The appellants contend that prior to the adoption of § 3-5-3(a), a person injured by a domestic animal had a cause of action based upon proof that the owner of the animal was guilty of ordinary negligence in caring for that animal. We are compelled to reject this contention based upon our review of several old cases.
One case relied upon by the appellants is Durden v. Barnett & Harris, 7 Ala. 169 (1844). While the Durden court did indeed say that an owner of domestic animals is liable where the injury is attributable to some neglect on his part, the appellants overlook the fact that that case had nothing to do with any situation resembling the present one. Durden involved an appeal by the plaintiff after the dismissal of his complaint. He sued for injuries his minor son had received when bitten by "certain hound dogs, from ten to twenty in number." The plaintiff alleged in his complaint that defendant "carelessly and negligently did permit [the dogs] to run at large, well knowing the said hound dogs then were used and accustomed to attack and bite mankind." The Durden court was merely saying that the plaintiff's averments were sufficient to state that the owner had notice of the animals' dangerous propensities. When Justice Goldthwaite wrote in that 1844 case "that the injury was attributable to some neglect on his part," it is obvious he was talking about a neglect in allowing animals with known dangerous propensities to run at large. Justice Goldthwaite was, most certainly, not referring to the right to sue for negligence in allowing a cow (or other animal) to be upon a public way, for no such right had ever existed in Alabama. See, e.g., Nashville & Chattanooga Railroad Co. v. Peacock, 25 Ala. 229 (1854).
The appellants further rely upon Hopper v. Crocker, 17 Ala.App. 372, 85 So. 843 (1919). This was also a dog bite case wherein the plaintiff alleged that the defendants, knowing that their pet "fice" dog had been bitten by a rabid dog and was likely to develop rabies itself, nevertheless allowed it to run at large. It bit the plaintiff and as a consequence she had to incur "great expense to take the Pasteur treatment, in seeking to be cured of her said injury." This perfectly fits Justice Goldthwaite's *1344 negligence example. The Hoppers' negligence, for which they were held liable, consisted of letting the dog run loose with knowledge that it had been bitten by a rabid dog and would now be dangerous if allowed to run at large. Thus, the owner knew that there was a present dangerousness by virtue of the bite by a rabid dog. This case says nothing about animals being struck on public ways.
In further support of their contention that the general rules of common law negligence govern damages caused by livestock to an automobile, the appellants cite Pelham v. Spears, 222 Ala. 365, 132 So. 886 (1931). They state that the complaint in Pelham was dismissed because plaintiff failed to aver that "the cow was of such a nature that the damage done was likely to arise from such an animal and that the owner knew of its propensity" and "the injury must have been foreseeable and must have been proximately caused by the owner's negligence." The appellants contend that this implicitly recognizes a cause of action against the owner of an animal for damage to a motor vehicle based upon ordinary principles of negligence.
The appellants, however, badly misperceive Pelham. It was just a case of a cow hit by a car. Because the appellants recognize that letting livestock run free was not considered negligence, and recognize that the Pelham Court would have required a showing of knowledge of an animal's mischievous propensities, but nevertheless contend that Pelham would have found liability upon proof that the injuries were the proximate result of the owner's action, it becomes clear that the appellants would have us hold that the cow's tendency to get in the road was a "mischievous propensity" which, upon a showing of the owner's knowledge, would have supported a finding of liability. It is, however, obvious that the tendency of a cow to get in a road is not a "mischievous propensity," whether or not the owner knows of the tendency. "Mischievous propensities" of an animal are its tendencies to bite, kick, gore, etc., not its tendencies to walk on a highway. Chief Justice Anderson recognized this in Pelham:
"The present complaint, while charging negligence, fails to establish a duty owing the plaintiff by the defendant not to permit the cow of the usual and ordinary nature and propensities to be upon the highway." (Emphasis added.)
222 Ala. at 367, 132 So. 886. While the appellants allege that the defendants allowed the animal to roam at large with knowledge of its dangerous propensities, they make no claim that the animal's propensities, whether or not such propensities were dangerous ones, were the proximate cause of their damages. While the bare allegation is made that the defendants knew of the animal's dangerous propensities, if any, it is apparent that the overall issue here is whether § 3-5-3(a) unconstitutionally bars such a remedy. As stated above, we feel that § 3-5-3(a) creates new remedies.
Pelham was a suit brought by the plaintiff for damages caused when his automobile struck a cow, which he alleged to be on a public highway through its owner's negligence. The plaintiff attempted to show that the cow's presence on the highway was in violation of a statute. Chief Justice Anderson recognized that in 1928 Alabama laws provided for "stock law districts." Section 10207, Code of 1923, authorized county commissioners to supervise elections "for establishing stock law districts in their respective counties." These districts were contrary to the general state law and in them it was forbidden to permit stock to run at large. Section 10215 provided for a penalty against the owner of livestock whose livestock caused damage "on the premises of another" within the "stock law district."
Chief Justice Anderson wrote in Pelham that the Court considered plaintiff's allegation that the cow was on the road "contra formam statuti" to mean "in violation of the stock law." Even with this assumption, however, he wrote that even if the act alleged occurred within a stock law district, the complaint "shows upon its face that the cow was not unlawfully upon the highway." The stock law, he stated, would have made it unlawful to permit stock to go upon the premises of another, but would not have *1345 made it unlawful for the stock to be upon the highway, because:
"The common-law rule that animals must be on owner's own premises does not obtain in this state. The rule is rather reversed and animals are permitted to run at large unless prohibited by statute. Means v. Morgan, 2 Ala.App. 547, 56 So. 759; M. & O. R.R. v. Williams, 53 Ala. 595; Hurd v. Lacy, 93 Ala. 427, 9 So. 378, 30 Am.St.Rep. 61."
Pelham v. Spears, 222 Ala. at 366, 132 So. 886. In Pelham, the cow's running at large violated no statute. Thus the cow was legally upon a public road and since its presence was legal, there could be liability only if the defendant-owner knew of "such propensities as would probably result in the injuries charged." Then, Chief Justice Anderson added:
"Even if the owner negligently permitted the cow to be on the highway, as charged in the complaint, the said negligence must have been connected with the damage and it should be averred and proved that the cow was of such a nature that the damage done was likely to arise from such an animal and the owner knew of its propensity." (Emphasis added.)
222 Ala. at 367, 132 So. 886. In other words, (1) the general English common law rule that animals had to stay on their owner's land has never been law in Alabama; (2) even if there had been proven a stock law district, it would not have been unlawful for the cow to be on the highway; and (3) even if the owner was negligent in letting the cow on the public road or highway, for that negligence to result in liability, it had to be shown that the cow's nature made it likely to do damage if it got on a public road. There was no liability when a cow "of the usual and ordinary propensities" was allowed to be upon the highway and an automobile ran into it. There could, however, be liability if the cow was known to gore passersby or to charge motor vehicles and was allowed to go upon the highway and do just that.
A reading of Pelham v. Spears shows that no action existed in Alabama against an owner who allowed his cow to be upon a public highway and shows that the appellants are incorrect when they allege that at common law, the driver of a vehicle, a passenger, or the owner of the vehicle had a cause of action for injuries caused by livestock if the acts of the animal's owner proximately caused the injury. Pelham reaches exactly the opposite result insofar as it relates to automobile collisions.
The appellants also allege that § 3-5-3(a) abolishes all remedies for damages caused by a known mischievous animal or by the owner's negligence or at least leaves a remedy barely worth pursuing, thereby violating § 13 of the constitution by abolishing a common law right. Yet § 3-5-3(a) makes no reference to damages caused by a "known mischievous animal." Prior to the adoption of that statutory provision in 1939, an owner was liable only for his negligence which allowed damages to occur because of an animal's "mischievous tendencies" or "mischievous propensities," Pelham v. Spears, 222 Ala. 365, 132 So. 886 (1931), and § 3-5-3(a) in no way attempts to restrict that long recognized right. The 1939 statute for the first time extended to a wronged party a right to recover when a negligently loosed animal destroyed or damaged "crops, shade or fruit trees or ornamental shrubs and flowers." These are not damages done by "mischievous" or "dangerous" animalsthey are damages done by ordinary animals as they walk and eat. Section 3-5-3(a) does not deal with damages or injuries caused by "mischievous" or "dangerous" animals. Persons injured by a negligently loosed animal of dangerous propensities still have the same common law remedy that has always existed under Alabama common law. The appellants err in saying that § 3-5-3(a) abolishes such a right. Furthermore, as stated, no other remedy for damages done to automobiles by negligently loosed animals of ordinary propensities ever existed at common law for § 3-5-3(a) to abolish.
Justice Maddox succinctly explained the effect of § 3-5-3(a) in Chandler v. Waugh, 290 Ala. 70, 274 So.2d 46 (1973), when he stated:

*1346 "We think the legislature, in adopting the proviso in § 79 [now § 3-5-3(a)], intended to make the owner or keeper of stock ... liable for damages in motor vehicle accidents caused by livestock only where the owner or keeper knowingly or willfully placed or put the livestock on the highway, road, or street."
290 Ala. at 74, 274 So.2d 46.
The appellants erroneously conclude that § 3-5-3(a) imposes such a low standard of care as to impose no standard at all, and that as a result, it abolishes an automobile owner's or driver's common law remedy for negligence. The 1939 statute actually created new rights that had not existed since the advent of statehood on December 14, 1819. This was well recognized by Judge Harwood when he wrote Randle v. Payne, 39 Ala.App. 652, 107 So.2d 907 (1958), in which he stated:
"Counsel for appellant asserts that Section 79, supra [§ 3-5-3(a), Code 1975], is violative of Section 13 of the Alabama Constitution which provides `That every person, for an injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law.'
"The injury mentioned in Section 13, supra, is damage resulting from breach of a legal duty. Whatever damage results from doing that which is lawful does not lay the foundation of an action. Pickett v. Matthews, 238 Ala. 542, 192 So. 261.
"Prior to the 1939 Act, supra, it was lawful for one to suffer stock to run at large upon a public highway. Crittenden v. Speake, 240 Ala. 133, 198 So. 137.
"It became unlawful so to do by the 1939 Act. At the same time that the legislature created this new legal duty it also provided a remedy imposing liability for its breach. This remedy, in case of injury to motor vehicles, was limited to those cases where the owner knowingly or wilfully placed stock on the highway. These limitations placed on the liability thus created became a part of the right created. See, 1 Am.Jur., Actions, Sec. 11. Having the power to create a new legal duty, necessarily the legislature had a right to limit the liability for breach of such duty."
39 Ala.App. at 656-57, 107 So.2d 907. We believe Judge Harwood was correct. The statute in question did not limit or destroy rights, but created them. The Legislature, in the creation of a new right, is certainly not prohibited by § 13 of the Constitution from restricting that newly created right. Since we do not find that § 3-5-3(a) abolishes a common law right, but instead created a new cause of action unknown at common law in Alabama, the decision of the trial court to dismiss the complaint for failure to state a claim upon which relief could be granted is due to be affirmed.
AFFIRMED.
MADDOX and BEATTY, JJ., concur.
SHORES, ALMON and BEATTY, JJ., concur specially.
FAULKNER, JONES, EMBRY and ADAMS, JJ., dissent.
SHORES, Justice (concurring specially).
I agree that the judgment of the trial court is due to be affirmed and adhere to the views that I expressed in Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334 (Ala.1980), and as expressed by the opinion of the Court in Lankford v. Sullivan, Long & Hagerty, [MS. July 9, 1982] 416 So.2d 996 (Ala.1982).
ALMON, J., concurs.
BEATTY, Justice (concurring specially):
I agree with the majority opinion, and also adhere to the views expressed in my dissent in Fireman's Fund American Insurance Company v. Coleman, 394 So.2d 334 (Ala.1981).
FAULKNER, Justice (dissenting).
The Scotts challenged the constitutionality of the statute on the grounds that it violated the Equal Protection and Due Process clauses of the United States and Alabama Constitutions, as well as Ala. Const., Art. I, § 13. I would hold that the *1347 statute violates § 13; and thus, would reverse the judgment and remand the cause for trial.
A synthesis of earlier opinions construing § 13 establishes: If the legislative enactment abolishes or infringes on a common law right, a substantive right, or a fundamental right, the legislation will survive constitutional scrutiny only if:
1) The right is voluntarily relinquished for equivalent benefits;
2) the statute eradicates a perceived social evil, or;
3) the cause of action is no longer of benefit to society.
Second, if the legislative enactment merely alters a common law right or remedy, or does not infringe on a fundamental right, the legislation will be upheld unless:
1) the cause of action has already accrued or "vested;" or
2) the legislation is not rationally related to a reasonable state objective.
Section 13 is contained in that portion of the Constitution entitled "Declaration of Rights." The Declaration of Rights, like the Bill of Rights, denotes those protections guaranteed to individuals against intrusions of the legislature. This provision had its origins in the Magna Charta and was a restriction upon royal power. See Ex parte Pollard, 40 Ala. 77 (1866); 2 Coke's Institute, p. 55. Thus § 13 was perceived by the framers of our Constitution as a fundamental right.
It is a basic tenet of statutory construction that a provision should be interpreted to give effect to every portion of the enactment. In order to effectuate the provisions of § 13, the powers of the legislature cannot be read so broadly that the "very rights the section was intended to protect" are left meaningless. Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334, 351 (Ala.1981). Nevertheless, there must be a guard against an interpretation that may "effectively preclude governmental action in areas of crucial public concern." The legislature has plenary powers to regulate matters concerning the health and welfare of its citizens, as well as other matters not constitutionally proscribed.
As early as 1866, this Court recognized a distinction between complete abolition of a cause of action and mere alteration of it. The Court stated, "the legislature may, consistently with the constitution, alter, enlarge, modify, or confer a remedy for existing rights." Ex parte Pollard, 40 Ala. 77 (1866) (upholding constitutionality of "stay law"). "If the State legislature should abolish all remedies, and provide none, or should provide such as would barely leave the remedy worth pursuing, then this court, in my judgment, would be bound, upon principle and authority, to hold such act unconstitutional and void." Id., (Bird, J., concurring). "The essence of the provision is ... that an individual is entitled to a remedy for his injuries. Accordingly, a legislative enactment should withstand a § 13 attack if some remedy is provided a plaintiff for his injuries." Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d at 355. (Beatty, J., dissenting).
A thorough examination of the cases interpreting § 13 shows that when the legislature has attempted to completely abolish a remedy for a protected right the statute must either eradicate a social evil or provide a quid pro quo. See Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334 (Ala.1981); Grantham v. Denke, 359 So.2d 785 (Ala.1978); Ivey v. Dixon Investment Co., 283 Ala. 590, 219 So.2d 639 (1969). Nevertheless, legislation which provides procedural prerequisites to bringing suits, or limits, modifies or merely alters a remedy in some way is valid, subject to a "vested rights" limitation. See Mayo v. Rouselle Corp., 375 So.2d 449 (Ala.1979); Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939); Swann v. Kidd, 79 Ala. 431 (1885); Martin's Executrix v. Martin, 25 Ala. 201 (1854).
Two basic questions are raised when interpreting § 13. First, what rights are protected from legislative abolishment? Second, when does a legislative enactment so restrict a remedy that an otherwise protected right is not "worth pursuing" and thus is effectively abolished?
*1348 The majority suggest that § 13 protects only common law rights that existed at the time the constitutional provision was enacted. This interpretation ignores the nature of the common law. The common law is constantly changing. Surely, the legislature did not intend to restrict the rights of Alabama citizens only to those rights which existed over 200 years ago. If this were the case, many advancements in the law would never have occurred. Furthermore, the language of the provision suggests no such limitation. This "common law right" interpretation is a judicially engrafted limitation which ignores the dynamic nature of societal standards from which fundamental rights evolve.
Protecting common law rights is similar to the Seventh Amendment's preservation of the right to jury trial in "actions at law." See U.S.Const., Amend. VII. The right to trial by jury has not been frozen to give the right only in those cases which were tried at law in 1791. See U.S.Const., Amend. VII. The right to trial by jury exists in all actions in which there is presently an "adequate remedy at law." See Beacon Theatres v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1958); Dairy Queen v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1961). A remedy by due process of law for injuries to a person is not limited to remedies that existed in the 1800's. This right is part of our "fundamental law," just as the right to trial by jury is. See Martin's Executrix v. Martin, 25 Ala. 201 (1854).
Nonetheless, viewing § 13 as limited to actions which existed at common law is a convenient rule of thumb for review and a good starting point. But, § 13 also protects other fundamental or substantial rights; and these rights may find their source in either the legislative or judicial process, or in societal customs and usages. Hale, The History of the Common Law of England, 44.45 (Grey ed. 1971); H. F. Stone, The Common Law in the United States, 50 Harv.L.Rev. 4, 12-14 (1936) (footnotes omitted). See also Landis, Statutes and the Sources of Law, Harvard Legal Essays, 213 (1934); Pound, Common Law and Legislation, 21 Harv.L.Rev. 383 (1908); Note, 82 Yale L.Rev. 258 (1972).
The term "fundamental right" is often used very loosely. But in this context, the term refers only to those rights which are so fundamental to an ordered society that the violation or abridgement of them would be constitutionally proscribed. Some such rights are expressly mentioned in our organic law, the written constitution, but others have been recently enunciated and afforded constitutional protection. Of the former, freedom of speech is an example, of the latter, the fundamental right to privacy is an example. See Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Thus, every fundamental and substantial right even though it may not have existed at common law, but which has become deeply embedded in our system of justice is constitutionally protected. See Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d 334 (Ala.1981) (Shores, J., concurring).
The converse of the principle that § 13 protection is not limited to common law actions is also true. Section 13 protection of a common law remedy may cease when "evolving mores [have] rendered those causes of action obsolete and of no benefit to society." Id. at 354. See Henley v. Rockett, 243 Ala. 172, 8 So.2d 852 (1942).
In sum, the legislative power is broad and subject to only narrow scrutiny under § 13. The legislature may alter, amend, or modify any cause of action either procedurally or substantively. The enactment need only be a reasonable means of obtaining a permissible objective. See Beasley v. Bozeman, 294 Ala. 288, 315 So.2d 570 (1975); Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939). The legislation also must not deny a remedy for injuries to rights which have accrued and become vested before the enactment of the legislationa retroactivity requirement. Id.
As against a § 13 challenge, the only prohibition on the legislative power arises when an act abolishes all remedies for a common law or fundamental right. The legislation will fail under constitutional scrutiny unless:

*1349 1) The right is voluntarily relinquished by its possessor in exchange for equivalent benefits or protection;
2) The legislation eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power; or
3) The cause of action is obsolete and of no benefit to society.
Grantham v. Denke, 359 So.2d at 789 (Maddox, J., dissenting).
Now turning to the issue of whether § 3-5-3(a) is constitutional. The first step in the analysis is to determine if the right to a remedy for injury or damage due to the negligence of a livestock owner is protected by § 13. In other words, is the right to sue a livestock owner a common law or fundamental right?
As early as 1844, this Court stated:
"[T]he owner of domestic animals, not necessarily inclined to commit mischief, such as dogs, horses, &c., is not liable for an injury committed by them, unless it can be shown that [1] he previously had notice of the animal's mischievous propensity; or, [2] that the injury was attributable to some neglect on his part."
Durden v. Barnett & Harris, 7 Ala. 169 (1844). See Hopper v. Crocker, 17 Ala.App. 372, 85 So. 843 (1919), cert denied, 204 Ala. 698, 85 So. 922 (1920); 3 J. Dooley, Modern Tort Law, §§ 37.02 and 37.05 (1977).
In Pelham v. Spears, 222 Ala. 365, 132 So. 886 (1931), the Court refused to permit recovery by an automobile owner for damages caused by a cow which had escaped. The complaint was dismissed because the plaintiff failed to aver that "the cow was of such a nature that the damage done was likely to arise from such an animal and the owner knew of its propensity." In other words, the injury must have been foreseeable and must have been proximately caused by the owner's negligence.
The Court at that time required knowledge of an animal's mischievous propensities before holding that the injury was foreseeable, because there was no rule or statute prohibiting livestock from running free, as there is today. Id. Thus, merely permitting the livestock to run free was not considered negligence because the owners had no duty to restrict their livestock. The case implicitly recognizes a cause of action for negligence of the livestock owner, but found that the complaint failed to aver that the injuries were the proximate result of the owner's action.
It is clear that at common law, the driver of a vehicle or owner had a cause of action for injuries caused by livestock if the acts of the animal's owner proximately caused the injury or if the owner knew of the animal's mischievous propensities.
The next step in the analysis is to determine if the legislature, by enacting Section 3-5-3(a), abolished all remedies for damages caused by a known mischievous animal or by the owner's negligence. The statute prohibits recovery unless the owner "knowingly or willfully put or placed such stock upon such public highway." In Carter v. Alman, 46 Ala.App. 633, 247 So.2d 676 (1971), the Court of Civil Appeals discussed the intention of the legislature in barring recovery unless the livestock are willfully placed on the highway. In an action for damages to an automobile caused by striking a cow in the road, the Court stated:
"There was evidence that appellee often had cows out of his pasture, and that the fence was of insufficient height to properly contain his cattle. His cattle had been observed in and along the highway at other times and had been hit by automobiles.
". . . .
"[T]he owner of the feasant beast [must have] placed or put it upon the highway with a "designed set purpose, intention, or deliberation." Evidence of negligence or gross carelessness is not enough [to establish liability under § 3-5-3(a).]"
Clearly the effect of requiring specific intent to place livestock in the road "would barely leave the remedy worth pursuing." The standard of liability is so high, that it would be almost impossible to meet. To require an injured person to prove that a livestock owner knowingly and purposefully *1350 placed the stock in the highway leaves most injured persons with no remedy. Unlike the "guest statute," which merely imposes a ore difficult burden on a guest riding in a car, § 3-5-3(a) imposes a nearly impossible burden on an injured automobile owner or driver. See Pickett v. Matthews, 238 Ala. 542, 192 So. 261 (1939). Under the "guest statute," Code 1975, § 32-1-2, a driver may be liable for "wanton" misconduct. Wantonness requires that the actor have knowledge of the perilous consequences of his or her conduct and that the actor pursue the conduct in reckless disregard of the consequences, i.e., recklessness or gross carelessness. See Lankford v. Mong, 283 Ala. 24, 214 So.2d 301 (1968); Couch v. Hutcherson, 243 Ala. 47, 8 So.2d 580 (1942). But under § 3-5-3(a), recklessness or gross carelessness is not sufficientthe injured party must prove intent. The low standard of care for livestock owners is actually no standard at all, and abolishes an automobile owner or driver's common law remedy for negligence.
The final determination to be made is whether the abolition of the common law cause of action eradicates a social evil or whether the cause of action was voluntarily relinquished in exchange for equivalent benefits.
The paradigmatic instance in which protected rights are relinquished in exchange for statutory benefits is the workmen's compensation statute. Under the Workmen's Compensation Act, the employee relinquishes the right to sue the employer for negligence, and instead is guaranteed a remedy regardless of the employer's "fault" in causing the employee's injury. See Grantham v. Denke, 359 So.2d at 787. In the present situation, automobile drivers, owners and passengers relinquish the right to sue the owner of livestock for injuries caused by the owner's negligence or recklessness. In exchange, the injured parties receive nothingthere are no alternative remedies or schemes for compensation.
The immunity provisions of § 3-5-3(a) do not eradicate a perceived social evil. Obviously, the intent of the legislature in enacting the predecessor of § 3-5-3(a), was to regulate the open range. The advent of the automobile, then considered "a dangerous instrumentality," necessitated regulation of livestock on the highway. The law prohibited owners of livestock from permitting their livestock to roam free. At the same time, the legislature gave immunity to those livestock owners, showing disfavor of the "dangerous instrumentality."
Whether the statute eradicated a social evil in 1939, I cannot say. But clearly, § 3-5-3(a) does not eradicate a social evil today. It abolishes an action for negligence, recklessness, and for failure to secure an animal whose known mischievous propensity is to roam on highways.
"[T]o hold a person liable for his carelessness is to make him more careful.... From [man's] dual capacity for human excesses springs the time-tested fault-based system of reparation for injuryits fountainhead being the imposition of duty to act prudently not to inflict injury to another, and its result being safer conditions for all of us."
Fireman's Fund American Insurance Co. v. Coleman, 394 So.2d at 346 (Jones, J., concurring).
Judicial notice is taken that there are thousands of miles of highways in this state, and along with them, thousands of automobiles and hundreds of accidents, injuries, and deaths each year. The safety of those driving automobiles should not be jeopardized by the negligence or recklessness of livestock owners.
Parenthetically, I note that § 3-5-3(a) is suspect under the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the Constitution. Without ruling on the issue, I see that the statute arbitrarily distinguishes between owners whose livestock damage plants, trees, shrubs, and so forth, and owners whose livestock damage automobiles and injure the passengers inside. It is questionable whether this classification is reasonably related to a permissible state objective.
*1351 It is my opinion that the legislature exceeded the constitutional limits on its legislative authority by enacting § 3-5-3(a).
JONES, EMBRY and ADAMS, JJ., concur.
JONES, Justice (dissenting).
I respectfully dissent. I concur generally in the dissent of Justice Faulkner. See my special concurrence in Lankford v. Sullivan, Long & Hagerty [MS. July 9, 1982] 416 So.2d 996 (Ala.1982). It is my belief that the challenged statute is so bad (speaking legally and not policy wise) that it cannot withstand constitutional attack (§ 13) under either the test espoused by Justice Almon in Lankford or the test set forth in Justice Faulkner's dissent in the instant case.
While I personally embrace the Lankford test, as modified by my special concurrence, I believe its application renders the legislation here in issue constitutionally defective. To suggest that the statute afforded a right of action against the owner of livestock that did not otherwise exist, as opposed to restricting (or, in practical effect, virtually abolishing) the right of action, is, in my opinion, utterly ridiculous; and an opinion of this Court so holding should come as quite a shock to those "Black Belt" legislators who sponsored this statute to "protect" their cattleowner constituents.