105 So.2d 649

**Elbert L. DICKEY**

v.

**Doris RUSSELL.**

3 Div. 811.

Supreme Court of Alabama.

Oct. 9, 1958.

Thos. F. Parker and J. O. Sentell, Jr., Montgomery, for appellant.

Hill, Robison & Belser, Montgomery, for appellee.

SIMPSON, Justice.

This is an appeal from a judgment rendered in a personal injury action for injuries sustained by the appellee in an automobile collision. The complaint consisted of six counts, all of which went to the jury. Counts I and II alleged simple negligence; Counts III and V, willfulness and wantonness; and Counts IV and VI, wantonness. Defendant's wife, Mary C. Dickey, was named party defendant also in Counts I, II, V, and VI. But the latter was removed from the case as defendant by the court's action in granting her motion to exclude the evidence as to her.

Appellant argues—inter alia—that error was committed when the trial court refused to give appellant's written requested affirmative charge with hypothesis as to Counts III and IV. The rule as to the required proof in such cases is well understood and need not be here repeated. Louisville & Nashville Railroad Co. v. Johns, 267 Ala. 261, 101 So.2d 265; Atlantic Coast Line R. Co. v. McMoy, 261 Ala. 66, 73 So.2d 85.

Stating the facts most strongly in favor of the appellee and giving her the benefit of every legitimate inference, they tend to show: The appellee, Doris Russell, was a guest passenger in the Mercury automobile of Gerald Bryant on the night of December 28, 1954. They had been visiting relatives in Greenville, Alabama, and were returning to Montgomery in the nighttime via U. S. Highway No. 31. It had been raining all evening, and the roads were wet. At the moment it was drizzling rain. At a point near Logan, Alabama, in Lowndes County, headed in a northerly direction, they passed a truck going in the same direction, proceeded about one and a half miles down the highway, and crossed the crest of a hill. The road at that location was good, having a good black top surface, and the center line of the highway was marked. The road here was downgrade going north and approached a sharp turn to the right. The road had been straight which appellee traveled until they crossed the hill and neared the curve. The right hand side of the road had shoulders, but the width of these shoulders was only about two feet between the edge of the pavement and the ditch on the right. At this same time the defendant, Elbert L. Dickey, was driving his wife's Pontiac automobile south on U. S. 31, facing appellee up the hill. He had just emerged from one curve and was entering the next curve to his left at a speed of about 40 miles per hour. Appellee's car was completely on its right side of the road and was traveling at about 35 to 40 miles per hour. As the car in which appellee was a passenger approached defendant's car, the defendant was driving on the wrong side of the road. Suddenly the defendant's car swerved to appellee's right and came across in front of the car appellee was in. At

the time appellee was changing a station on the car radio, and she looked up in time to see the lights of defendant's car cross over in front of her. Thus defendant's car was placed directly in front of Bryant's Mercury on the latter's side of the road. Bryant applied his brakes just before the impact and pulled the car to the right in order to avert the accident. Bryant's car collided with the right side of the defendant's car, crushing the latter's car door. The impact occurred all on appellee's side of the road. Defendant's car was traveling at a speed of 30 or 35 miles per hour at the time of the crash, or some 5 or 10 miles slower than his previous rate. Appellee's car did not move at all when hit, but stopped immediately. The front of defendant's car was knocked around and it skidded around about 6 feet. The right front door of defendant's Pontiac and the front end of Bryant's Mercury were badly damaged. Bryant was knocked unconscious and remained in that state for 24 hours. Appellee sustained the injuries for which she now sues. The Mercury had gone off the right hand shoulder of the road about a foot with both wheels, with the front wheel slightly further off the pavement than the back wheel. After the wreck, a distance of about one foot separated the two cars. The Pontiac was sitting across the center line, with most of the car on appellee's side of the road. Glass lay on the road some distance up the road from the cars. Near the scene of the wreck a roadway led to the left toward Montgomery. The position of the Pontiac after the wreck was just about at the center of that roadway. Defendant was drunk; he appeared in a dazed condition after the accident, didn't seem to know much about the accident, was talking, cursing, and staggering considerably, and fumbled for his driver's license when asked for it. A Highway Patrolman testified that he smelled alcohol on the defendant and thought that he had had too much to drink to drive an automobile. Defendant refused to tell his name to the plaintiff. There was no evidence that either appellee or her driver, Bryant, were intoxicated at the time of the collision, other than that they had had a couple of mixed drinks a few hours before. Bryant's car had good brakes and his windshield wiper was working. Defendant's tires and brakes were in good condition, the front two tires being practically new, but one rear tire was practically slick.

In McNickle v. Stripling, 259 Ala. 576, 67 So.2d 832, 833, we said with respect to wantonness:

"(W)hile the principle is the same in all cases, there are necessarily shades of differences in the facts of each case and for that reason the definition of wantonness must be read in the light of the circumstances of the particular case under review. Wilhite v. Webb, 253 Ala. 606, 46 So.2d 414; Simon v. Goodman, 244 Ala. 422, 13 So.2d 679.

"The concept is, of course, universal that to constitute wantonness it is not essential that the defendant should have entertained a specific design or intent to injure the plaintiff. A wilful or intentional act may not necessarily be involved in wantonness. It may consist of an inadvertent failure to act by a person with knowledge that someone is probably imperiled and the act or failure to act is in reckless disregard of the consequences. Atlantic Coast Line R. Co. v. Brackin, 248 Ala. 459, 461, 28 So.2d 193.

"Or stated another way: 'Wantonness may arise from knowledge that persons, though not seen, are likely to be in a position of danger, * * * and in violation of law [defendant] brings on the disaster. * * *' Godfrey v. Vinson, 215 Ala. 166, 169, 110 So. 13, 16."

We think the evidence adduced in this case made a jury question on the issue of wantonness raised by Count IV. Upon this evidence it was permissible for the jury to find that the defendant had knowl-

edge that the car in which appellee and Bryant were driving was approaching the curve from the opposite direction, that the weather conditions were adverse to safe normal automobile operation, that defendant was driving his own car on the wrong side of the highway, that he knew that appellee and her companion were in a likely position of danger, and that with a conscious disregard of the conditions in that situation Dickey acted or failed to act in such a manner that he caused the collision.

■ But we think the lower court erred to a reversal in its refusal to give the charge as to Count III, which charged willfulness and wantonness. It will be noticed that this count is in the conjunctive, and not in the disjunctive or alternative form. We have made a distinction between averring willfulness and wantonness according to the two methods. We have held that proof of wantonness will support a count alleging "willful or wanton" conduct, whereas a count alleging "willful and wanton" conduct requires proof of willfulness or design or purpose. This Court, speaking through the late Justice Brown, stated in Central of Georgia Ry. Co. v. Corbitt, 218 Ala. 410, 118 So. 755, 756, the following:

"While as to liability and the defenses which may be interposed, there is no difference between wanton injury and willful or intentional injury, there is a well-recognized distinction in the elements of these two classes of wrongs. To constitute willful or intentional injury there must be a knowledge of the danger accompanied with a design or purpose to inflict injury, whether the act be one of commission or omission, while in wantonness this design or purpose may be absent, and the act done or omitted with knowledge of the probable consequence, and with reckless disregard of such consequence. Alabama G. S. R. Co. v. Moorer, 116 Ala. 642, 22 So. 900; Birmingham Railway & Electric Co. v. Bowers, 110

Ala. 328, 20 So. 345; Louisville & N. R. Co. v. Anchors, 114 Ala. 492, 22 So. 279, 62 Am.St.Rep. 116."

And Justice Somerville, speaking for the Court, said in Adler v. Martin, 179 Ala. 97, 59 So. 597, 600:

"In such cases as this, it is always a matter of difficulty, and frequently of doubt, to determine whether or not the evidence fairly permits any reasonable inference of willfulness or wantonness on the part of the actor whose conduct is in question. Some of the questions presented by this appeal demand that we review and sit in judgment upon the evidence pertinent to this inquiry. This we have undertaken to do, and we cannot escape the conclusion that, however negligent defendant's servant may have been, and whether the jury believed the narrative of the one witness or the other, there is nothing in the evidence from which it may be fairly inferred that this servant *willfully*—that is, intentionally and designedly—ran this car upon this unfortunate intestate. The complaint is that the act was *willfully and wantonly* done, not willfully *or* wantonly; and while in legal effect, for some purposes, wantonness is the equivalent of willfulness, (Mobile, J. & K. C. R. Co. v. Smith, 146 Ala. 312, 40 So. 763; Montgomery St. Ry. Co. v. Lewis, 148 Ala. 134, 142, 41 So. 736), yet there is a difference in the two mental attitudes thus described, and the proof that may suffice to show the one may fall short of showing the other.—Birmingham R., Light & Power Co. v. Ryan, 148 Ala. 69, 76, 41 So. 616. This distinction is clearly indicated by the definitions given in Birmingham Railway & Electric Co. v. Bowers, 110 Ala. 328, 20 So. 345; Louisville & N. R. Co. v. Anchors, 114 Ala. 492, 498, 22 So. 279, 62 Am.St.Rep. 116; Birmingham Railway & Electric Co. v. Pinckard, 124 Ala. [372], 375, 26 So. 880; Peters v. Southern Ry. Co., 135 Ala. 533, 536,

33 So. 332; Memphis & C. R. Co. v. Martin, 117 Ala. 367, 23 So. 231, and numerous other cases. 'A partial employment of available means, evincing some degree of care, is not sufficient' to disprove wanton negligence. Birmingham Railway & Electric Co. v. Pinchark, 124 Ala. [372], 375, 26 So. [880], 881. But such efforts might, in particular cases, be regarded as conclusive of the absence of an *intention* to injure. * * *

"If the failure of the chauffeur to observe the course of intestate after he left the sidewalk, and to be prepared to avoid a collision with him, if he should heedlessly proceed into the line of danger, might support the inference that he was *wantonly* indifferent to such a catastrophe, nevertheless it cannot, in view of all the evidence, support the inference that he intentionally, i. e. purposely and designedly, ran his car against intestate."

Taking the evidence as a whole, while it may have justified the submission of the case to the jury on the wanton count, there is nothing in the evidence to warrant a finding that the injury was willfully and intentionally inflicted. For the error, therefore, in refusing the affirmative charge as to Count III, the judgment of the circuit court must be reversed. Some other cases sustentive of the principle are: Porterfield v. Life & Casualty Co. of Tennessee, 242 Ala. 102, 5 So.2d 71; cf. Southern Railway Co. v. Smith, 173 Ala. 697, 707, 55 So. 913; Memphis & C. R. Co. v. Martin, 117 Ala. 367, 382, 23 So. 231.

■ The doctrine of error without injury cannot be applied to the refusal of defendant's requested affirmative charge denying plaintiff's right to recover under Count III which was not supported by the evidence, merely because there was evidence tending to support other counts. Louisville & Nashville Railroad Co. v. Johns, 267 Ala. 261, 101 So.2d 265; Jordan v. Henderson, 258 Ala. 419, 63 So.2d 379.

We pretermit discussion of the other incidents pending trial argued as error since they probably will not occur on a retrial of the case.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and COLEMAN, JJ., concur.