THOMAS, Judge.
In March 2015, Robert Brewer and Mary Pauline Brewer were traveling through Theodore in Mobile County in their pickup truck around 11:00 p.m. The pickup truck collided with a cow, later identified as "Cow 64," that had wandered onto the roadway, causing damage to the *666 pickup truck and injuries to Robert. In February 2016, the Brewers sued Joshua Atkinson, the owner of Cow 64, William J. Atkinson III, the owner of the property upon which Cow 64 had been kept, and Atkinson Nursery, Inc. ("the nursery"), the business operated by William (Joshua, William, and the nursery are hereinafter referred to collectively as "the Atkinsons"), in the Mobile Circuit Court ("the trial court").[1] In the complaint, the Brewers claimed that Joshua had violated a duty under Ala. Code 1975, § 3-5-1 et seq., to refrain from knowingly or willfully putting or placing Cow 64 on a public roadway and that they were entitled to damages for such breach. The Brewers also sought damages for the alleged negligence, negligence per se, or wantonness of William and the nursery and for Joshua's alleged negligent hiring, training, or supervision of William and/or the nursery based on allegations that the Atkinsons had failed to properly fence Cow 64. In addition, Mary sought damages for loss of consortium. The Atkinsons answered the complaint, generally denying liability.
In February 2017, the Brewers moved for a partial summary judgment, arguing that William and the nursery, as mere keepers of Cow 64 as opposed to its owners, were not entitled to rely on Ala. Code 1975, § 3-5-3(a), which, the Brewers contended, limits the liability of only owners of livestock to owners or occupants of motor vehicles who strike livestock on a roadway.[2] In March 2017, the Atkinsons moved for a summary judgment on all claims against them, arguing, among other things, that they had not knowingly or willfully put or placed Cow 64 on the roadway and were therefore, under § 3-5-3(a), not liable to the Brewers. The trial court entered a judgment on July 7, 2017, denying the Brewers' motion for a partial summary judgment and granting the Atkinsons' motion for a summary judgment on all counts of the complaint. The Brewers filed a timely postjudgment motion on August 3, 2017, in which they asserted for the first time a challenge to the constitutionality of § 3-5-3(a). The trial court summarily denied the Brewers' postjudgment motion the next day, and the Brewers timely appealed to our supreme court, which transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6).
On appeal, the Brewers raise three arguments. They argue that § 3-5-3 is unconstitutional facially and as applied. They argue that § 3-5-3(a) is repugnant to Alabama's status as a "closed range" state and that the 1951 amendments to Alabama's stock laws implicitly repealed the limitation of liability in § 3-5-3(a). Finally, *667 they contend that the fence in which Cow 64 was contained was not properly constructed in accordance with the statutes governing livestock fencing found at Ala. Code 1975, §§ 3-4-3, 3-4-4, and 3-4-5 and, therefore, that there existed a jury question on whether the Atkinsons knowingly or willfully created a hazard that Cow 64 would enter the roadway by allegedly improperly constructing and maintaining the fence.
We review a summary judgment de novo; we apply the same standard as was applied in the trial court. A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3) ; see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by 'substantial evidence.' " Lee, 592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989) ; see Ala. Code 1975, § 12-21-12(d).
As noted above, the Brewers first raised a constitutional challenge to § 3-5-3(a) in their postjudgment motion. The Brewers argued that § 3-5-3(a) is unconstitutional both facially and as applied. However, the Brewers did not properly serve the attorney general with the facial constitutional challenge because they mailed a copy of their postjudgment motion to the attorney general by use of regular first-class mail. See Ex parte Gentry, 238 So.3d 66, 72-74 (Ala. Civ. App. 2017) (explaining that service on the attorney general may be made by certified mail under Rule 4(i)(2), Ala. R. Civ. P., but that sending notice of a constitutional challenge to the attorney general by the use of regular mail is insufficient service of process). We conclude that the facial constitutional challenge was not properly before the trial court and is therefore not properly before this court for consideration. Tucker v. Personnel Bd. of Dothan, 644 So.2d 8, 9 (Ala. Civ. App. 1994) ("If the party challenging the constitutionality of a statute fails to serve the attorney general, as required by Ala. Code 1975, § 6-6-227, the trial court has no jurisdiction to decide the constitutional claims.").
We have held, however, that the attorney general is not required to be served with an "as applied" challenge to a statute. See Ex parte Gentry, 238 So.3d at 74-75 (citing Ex parte Squires, 960 So.2d 661, 664-65 (Ala. 2006), for the proposition that "[a] party need not serve the attorney general to assert an 'as applied' challenge to a statute"). Thus, the failure to properly serve the attorney general is not an impediment to our review of the Brewers' "as applied" challenge to § 3-5-3(a). Instead, we conclude that our review of the Brewers' "as applied" challenge to § 3-5-3(a) is precluded because of the Brewers' late assertion of that challenge.
By now it is well settled that "a trial court has the discretion to consider a new legal argument in a post-judgment motion, but it is not required to do so." Green Tree Acceptance, Inc. v. Blalock, 525 So.2d 1366, 1369 (Ala. 1988) ; see also Espinoza v. Rudolph, 46 So.3d 403, 416 (Ala. 2010) ; Special Assets, L.L.C. v. Chase Home Fin., L.L.C., 991 So.2d 668, 677-78 (Ala. 2007).
*668 The trial court denied the Brewers' postjudgment motion without comment on the arguments contained therein. Thus, nothing in the record indicates that the trial court considered the constitutional challenge to § 3-5-3(a), and, therefore, we will not presume that the trial court did so. See Special Assets, 991 So.2d at 678. Furthermore, our supreme court has explained that " '[a]n appellant cannot invoke action by a court and have a case tried on certain issues and then later, when dissatisfied with the result, raise an entirely new issue, such as the constitutionality of the statutes under which he was proceeding,' " in a postjudgment motion. Alabama Power Co. v. Capps, 519 So.2d 1328, 1330 (Ala. 1988) (quoting Talley v. A & M Constr. Co., 284 Ala. 371, 373, 225 So.2d 359, 360 (1969) ); see also Hicks v. Huggins, 405 So.2d 1324, 1327 (Ala. Civ. App. 1981) ("Constitutional issues raised for the first time in a motion for new trial come too late for consideration on appeal."). Accordingly, we will not consider the "as applied" constitutional challenge to § 3-5-3(a) asserted by the Brewers.
The Brewers next argue that the limited remedy contained in § 3-5-3(a) was developed as part of an "open range" livestock system, under which livestock owners could allow their livestock to roam at large and upon the lands of another. According to the Brewers, the 1951 amendments to Alabama's stock laws created a "closed range" livestock system, in which livestock owners are required to fence in livestock. Based on these premises, the Brewers challenge § 3-5-3(a) as repugnant to the "closed range" system and contend that, based on Monfee v. Seymore, 392 So.2d 1198 (Ala. Civ. App. 1980), this court should decide that the limited remedy contained in § 3-5-3(a) was implicitly repealed by the 1951 amendments to Alabama's stock laws.
In Monfee, this court determined that Ala. Code 1975, § 3-4-6(a), had been implicitly repealed by the 1951 amendments to Alabama's stock laws. Monfee, 392 So.2d at 1201. Section 3-4-6(a) had extended immunity to livestock owners for damage done by their livestock to lands not enclosed by a lawful fence. As we explained in Monfee, before the enactment of the 1939 Local Option Stock Law, Act No. 68, Ala. Acts 1939 ("the 1939 act"), Alabama had been what is referred to as an "open range" state. Id. at 1200. That is, before the 1939 act, "Alabama was an open range state where it was lawful for one to allow his livestock to go at large on the lands of another." Id. Thus, if a landowner wanted to protect his crops from roaming livestock, the landowner was required to fence the livestock out of his property. Id. at 1201. As we noted in Monfee, the 1939 act, which included what is now § 3-5-3(a), changed Alabama from an "open range" state to a "closed range" state, except that it allowed each county the option of electing to remain an "open range" county. Id. In 1951, the legislature, in Act No. 53, Ala. Acts 1951 ("the 1951 act"), abolished those provisions of the 1939 act allowing for the creation of "open range" counties, making the entire state a "closed range." Id. The 1951 act also "repealed ... 'all other laws or parts of laws in conflict herewith.' " Id. (quoting the 1951 act). We concluded in Monfee that the immunity extended by § 3-4-6(a) to livestock owners for damage done by livestock to another's property was repugnant to "closed range" principles, which require livestock owners to fence in livestock, and, therefore, that § 3-4-6(a) had been implicitly repealed by the 1951 act. Id.
However, we cannot agree with the Brewers that the limited remedy contained in § 3-5-3(a) was implicitly repealed by the 1951 act. The Court of Appeals considered *669 this exact argument in Randle v. Payne, 39 Ala. App. 652, 656, 107 So.2d 907, 910 (Civ. 1958) :
"We think of necessity we must approach this review on the basis of whether the 1951 Act repealed the limited remedy provided in Section 79 of the 1939 Act [which is now § 3-5-3(a) ], which in effect created a new cause of action, i.e., liability of the owner of stock running at large on a public highway, where no such right, or remedy, had before existed.
"It is appellant's contention, in effect, that the 1951 Act reinstated the common law, which allows a remedy based on negligence for damages by trespassing cattle, and therefore, by implication, repealed the limitations for recovery placed on the owner of a motor vehicle injured by stock at large on a public highway as provided in Section 79, supra."
The Randle court had previously explained that
"[t]he doctrine established by the early statutes and decisions of this State, prior to more recent legislative enactments, was that the owner of livestock was not liable for damages for intrusions of stock on the lands of another. The burden was upon the landowner to fence stock out.
"Such has been the law since the formation of Alabama, for the laws of the Mississippi Territory, which were adopted by the State of Alabama at the formation of our State constitution, contain provisions in direct repugnance to the common law on this subject, and to the extent of this repugnance repealed the common law. Nashville & [Chattanooga] R.R. Co. v. Peacock, 25 Ala. 229 [ (1854) ].
".... In other words, we were an open range State."
Randle, 39 Ala. App. at 654-55, 107 So.2d at 909.
As the Randle court further explained, the 1939 act, which the court described as "a rather comprehensive stock law," changed Alabama to a "closed range" state, in part by providing that the owner of stock running at large was to be liable for damage to crops and other vegetation. Randle, 39 Ala. App. at 655, 107 So.2d at 909. In that same provision, which is now codified at § 3-5-3(a), the legislature provided for limited liability of livestock owners for damage incurred by to the owners or occupants of motor vehicles caused by stock if the owner of the stock had "knowingly or wilfully put or placed such stock upon such" roadway. This provision, the court noted, created a limited right to recover against the owner of livestock where none had before existed.
"As stated in 1 Am. Jur., 'Actions,' Section 12 : 'It is an established principle that if the statute creating a new right where none existed before provides, also, a valid remedy for the enforcement of the right created, the remedy thus given must be pursued in the enforcement of the right, to the exclusion of any other remedy, provided it is an adequate one.'
"If the limited remedy provided in Section 79 of the 1939 Act for the owner of motor vehicles for damages caused by stock at large on a public highway be deemed repealed by the 1951 Act, such repeal must result by implication because of repugnancy between the 1939 and the 1951 Acts. We cannot read any repugnancy between the two acts merely because the 1951 Act omits to create or enlarge the existing remedy provided in Section 79. Indeed, repeals of statutes by implication are not favored, and if the latter statute is not repugnant or inconsistent with the prior statute, it must be *670 deemed to continue in full operative effect. See 18 Ala. Digest, Statutes, [Key No.] 158 and 159 for innumerable authorities. This being so, it is our conclusion that the owner of a motor vehicle suffering damage from stock at large is limited to the remedy provided by Section 79, supra."
Randle, 39 Ala. App. at 656, 107 So.2d at 910.
Although the contention is contained in their argument regarding the constitutionality of § 3-5-3(a), the Brewers contend that decisions like Randle and Scott v. Dunn, 419 So.2d 1340 (Ala. 1982), are incorrectly premised on the idea that, at the time of the enactment of our state constitution, Alabama was an "open range" state. Instead, the Brewers contend, the operative date should be 1975, when Alabama incorporated the common law of England at the time the legislature enacted the 1975 Code, and, thus, the Brewers say, Alabama common law at that time was in accordance with "closed range" principles; therefore, the Brewers argue, § 3-5-3(a) did not create a new right of recovery, but, instead, limited the common-law right to recover that obtained under the English common law and is therefore repugnant to Alabama law. Even were we inclined to agree with the Brewers, and we are not, we first note that this court is bound by the pronouncements of our supreme court, see Ala. Code 1975, § 12-3-16, which has always maintained that, insofar as livestock laws were concerned, until the 1939 act, Alabama followed the law of the Mississippi Territory, which was that livestock could range freely and that the burden was on a landowner to fence out livestock as opposed to being on the livestock owner to fence in his or her livestock. Scott, 419 So.2d at 1341-42. In addition, the Brewers' argument fails because, when Alabama adopted the English common law in the 1975 Code, it did so with the express proviso that it was adopted "so far as it is not inconsistent with the Constitution, laws and institutions of this state." Ala. Code 1975, § 1-3-1. Because § 3-5-3(a) existed as Title 3, Section 79, Ala. Code 1940 (Recomp. 1958) (or as Section 79 of the 1939 act), the English common law allowing for recovery in situations involving motor-vehicle collisions with livestock was inconsistent with existing Alabama law and was, therefore, not adopted.
Finally, we turn to the Brewers' argument that the failure of the Atkinsons to construct the fence containing Cow 64 in accordance with the statutory requirements for livestock fencing set out in §§ 3-4-3, 3-4-4, or 3-4-5 created a genuine issue of material fact regarding whether they "knowingly or willfully" allowed Cow 64 to pose a hazard. The Brewers appear to contend that, if the Atkinsons "acted consciously and with knowledge and awareness ... that the fencing was never in compliance with the law," they could be found to have knowingly or willfully allowed Cow 64 to roam. Of course, the Brewers appear to misconstrue what is required to prove that one has acted "knowingly or willfully."
Willfulness is not equivalent to wantonness. Lyons v. Walker Reg'l Med. Ctr., 868 So.2d 1071 (Ala. 2003). That is, proof that one had " 'knowledge and consciousness that the injury is likely to result from the act done or from the omission to act,' " Mazda Motor Corp. v. Hurst, 261 So.3d 167, 189 (Ala. 2017) (quoting Ex parte Dixon Mills Volunteer Fire Dep't, Inc., 181 So.3d 325, 333 (Ala. 2015) ), although sufficient to establish wantonness, is not sufficient to establish that one has acted willfully. To be sure, more recent cases have, in discussions of wantonness, discussed "willful and wanton" or "willful or wanton" conduct as if the two are simply *671 interchangeable terms for the same level of culpability. See, e.g., Mazda Motor Corp., 261 So.3d at 188-93 (discussing the proof required to support a claim of wantonness); see also Ex parte Dixon Mills Volunteer Fire Dep't, 181 So.3d at 333 (discussing whether the defendant had engaged in "willful or wanton misconduct" under Ala. Code 1975, § 6-5-336(d)(2) ). However, we do not perceive these sometimes confusing statements as an intent to change the long-standing law governing the separate concepts of willfulness and wantonness.
"An approved definition of wantonness is the conscious failure of one charged with the duty to exercise due care and diligence, to prevent an injury after discovery of peril. Or, under circumstances where one is charged with the knowledge of such peril, and conscious that injury will likely, probably or inevitably result from his actions, or his failure to act, he does not take the proper precautions to prevent injury.
"To constitute 'willful or intentional injury,' there must be knowledge of danger accompanied with a design or purpose to inflict injury, whether the act be one of omission or commission. To constitute 'wantonness' the design may be absent if the act is done with knowledge of its probable consequence and with a reckless disregard of those consequences."
English v. Jacobs, 263 Ala. 376, 379, 82 So.2d 542, 544-45 (1955) ; see also Porterfield v. Life & Cas. Co. of Tennessee, 242 Ala. 102, 105, 5 So.2d 71, 73 (1941). Our supreme court has also discussed the distinction between an averment of "willful and wanton conduct" and an averment of "willful or wanton conduct." Dickey v. Russell, 268 Ala. 267, 270, 105 So.2d 649, 651 (1958). The Dickey court explained that to support a claim of "willful and wanton" conduct a plaintiff must present proof of "willfulness or design or purpose," while to support a claim of "willful or wanton" conduct, a plaintiff must present proof of only wantonness.[3] Dickey, 268 Ala. at 270, 105 So.2d at 651.
Section 3-5-3(a) requires knowing or willful conduct on the part of the livestock owner. That is, it requires proof that the livestock owner had a design or purpose to inflict injury. Thus, even proof that the Atkinsons acted wantonly, i.e., that they were conscious of the danger of Cow 64 wandering free because of the allegedly defective fence, is insufficient to establish liability under § 3-5-3(a).
In addition, § 3-5-3(a) requires proof not only that the owner acted knowingly or willfully, but also that he or she "put or placed such stock upon such public highway." See Carpenter v. McDonald, 495 So.2d 640, 641 (Ala. 1986) (stating that a livestock owner is not liable to the owner or occupant of a motor vehicle "unless the owner knowingly or wilfully puts the livestock on the road"); Chandler v. Waugh, 290 Ala. 70, 74, 274 So.2d 46, 49 (1973) (stating that liability to the owner or occupant of a motor vehicle arises under § 3-5-3(a)"only where the owner or keeper knowingly or wilfully placed or put the livestock on the highway, road or street"); and Carter v. Alman, 46 Ala. App. 633, 635, 247 So.2d 676, 677 (Civ. 1971) (indicating that liability under the predecessor statute to § 3-5-3(a) arises only when the owner puts or places livestock on the roadway). The facts of Carter are quite similar to *672 those of the present case. The plaintiff in Carter presented evidence indicating that the livestock owner's cows were often "out of his pasture, and that the fence was of insufficient height to properly contain his cattle." Carter, 46 Ala. App. at 635, 247 So.2d at 677. This court explained that, "for recovery, a motorist must submit proof that the owner of the feasant beast placed or put it upon the highway with a 'designed set purpose, intention, or deliberation.' Evidence of negligence or gross carelessness is not enough." Id. We concluded that the plaintiff in Carter had not met her burden of providing evidence establishing that the livestock owner had put or placed his errant cow on the roadway. Id. Similarly, the Brewers have presented no evidence establishing that the Atkinsons placed or put Cow 64 on the highway. Thus, the Brewers failed to present evidence creating a genuine issue of material fact, and we affirm the summary judgment in favor of the Atkinsons.
AFFIRMED.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

The Brewers included fictitiously named parties in their complaint, but the record does not reflect that the complaint was ever amended to substitute any actual parties for the fictitiously named parties; thus, no parties other than the Atkinsons were served with the complaint, and the existence of the fictitiously named parties in the complaint does not prevent the judgment entered by the trial court from being final. See Rule 4(f), Ala. R. Civ. P.; Griffin v. Prime Healthcare Corp., 3 So.3d 892 n.1 (Ala. Civ. App. 2008).

Section 3-5-3(a) reads, in pertinent part, as follows:
"[T]he owner of any stock or animal shall not be liable for any damages to any motor vehicle or any occupant thereof suffered, caused by or resulting from a collision with such stock or other animal, unless it be proven that such owner knowingly or wilfully put or placed such stock upon such public highway, road or street where such damages were occasioned."
We note that the Brewers have not raised on appeal the argument that § 3-5-3(a) does not apply to keepers of livestock. See Chandler v. Waugh, 290 Ala. 70, 74, 274 So.2d 46, 49 (1973) (indicating that the predecessor statute to § 3-5-3 applied to an "owner or keeper of stock").

Thus, the Ex parte Dixon Mills Volunteer Fire Department court properly discussed whether the evidence supported a claim of wantonness and omitted discussion of willfulness in concluding that the volunteer defendant's actions were not "willful or wanton." 181 So.3d at 335.